**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-23-01714-001-TUC-JGZ (MSA) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Lamar Lee Green, | |
| Defendant. | |

Pending before the Court is a petition to revoke Defendant Lamar Lee Green's probation. For the following reasons, the Court finds that Defendant violated his conditions of probation as alleged.

## I.    Background

In February 2024, Defendant pleaded guilty to transportation of illegal aliens for profit. (Docs. 28, 29, 30, 31.) In April, he was sentenced to a 48-month term of probation. (Doc. 41.) Six weeks later, United States Probation Officer Samuel Levey filed a petition to revoke Defendant's probation. (Doc. 42.)

The petition alleges that Defendant violated three conditions of his probation. (*Id.* at 1–2.) Allegation A concerns a violation of standard condition 13, which requires that Defendant "follow the instructions of the probation officer related to the conditions of supervision." (*Id.* at 1.) The petition alleges that Officer Levey told Defendant to provide a copy of a mental health assessment he completed at Southwest Center while on pretrial release, and that he failed to do so. (*Id.*) Allegations B and C concern violations of special

conditions 1 and 4, respectively. (*Id.* at 2.) Special condition 1 requires, in relevant part, that Defendant "participate as instructed by the probation officer in a program of substance abuse treatment." (*Id.*) Special condition 4 requires, in relevant part, that Defendant "participate in a mental health assessment." (*Id.*) The petition alleges that Officer Levey told Defendant to schedule substance abuse and mental health assessments at Mountain Valley Counseling Associates (Mountain Valley), and that he failed to do so. (*Id.*)

Defendant requested an evidentiary hearing, and a hearing was held on October 3. (Docs. 45, 48, 53.) At the hearing, both Officer Levey and Defendant testified, and various exhibits were admitted into the record. (Docs. 53, 54, 55, 56, 57.)

Officer Levey testified that he went over the conditions of probation with Defendant in late April, and that Defendant signed both the judgment and a form acknowledging that his questions had been answered and that there were no barriers to him complying with his conditions. (Tr. 6–8; Pl.'s Exs. 1, 2.)[1] Regarding Allegation A, Officer Levey testified that, on April 25 and May 6, he told Defendant to provide a copy of Defendant's previous mental health assessment. (Tr. 9.) He testified that although Defendant acknowledged the instructions, Defendant had not provided a copy as of the date of the hearing. (Tr. 9–10.)

Regarding Allegations B and C, Officer Levey testified that, on May 7, he sent a text message instructing Defendant to schedule a substance abuse and mental health assessment at Mountain Valley, and that Defendant responded, "No texts after 9pm please." (Tr. 12–13; Pl.'s Ex. 4.) Officer Levey testified that he sent a follow-up message on May 29, advising Defendant to schedule the assessment no later than May 30. (Tr. 13; Pl.'s Ex. 5.) Defendant responded on May 30, stating that he would call Officer Levey because he did not understand why he had to complete another assessment. (Tr. 13–14; Pl.'s Ex. 5.) Later that day, Defendant sent another message, stating "June 17th." (Tr. 14; Pl.'s Ex. 5.) Officer Levey testified that he called Defendant to find out what that message meant, but that Defendant became argumentative and refused to clarify. (Tr. 14–15.) A few days later, Officer Levey emailed Mountain Valley, inquiring whether Defendant had

---

[1]     "Tr." refers to the transcript of the evidentiary hearing. (Doc. 59.)

scheduled his assessment. (Tr. 15; Pl.'s Ex. 7.) Mountain Valley responded that it had had no contact with Defendant since February. (Tr. 15; Pl.'s Ex. 7.)

Regarding Allegation A, Defendant testified that he spoke to his provider and confirmed that she had emailed a copy of the assessment to Officer Levey. (Tr. 34–35.) He also testified that Officer Levey never asked him for a copy of the assessment. (Tr. 41.)

Regarding Allegations B and C, Defendant testified that during his probation intake in April, he told Officer Levey that he had already completed an assessment, and that Officer Levey "told [him] that was something [they] could petition the Court for." (Tr. 32.) He did not understand, however, what "petition the Court" meant. (Tr. 32–33.) He testified that, during a telephone call on May 30, he told Officer Levey that his work schedule made it difficult to contact Mountain Valley, that he would be scheduling the assessment at a different clinic instead, and that Officer Levey "was accepting" of him using a different clinic. (Tr. 33–34, 37.) He explained that, on May 30, he scheduled the assessment for June 17 at La Frontera and then sent the "June 17th" text message. (Tr. 35–36.) He testified that, contrary to Officer Levey's testimony, he explained what the "June 17th" message meant when Officer Levey called seeking clarification. (Tr. 36–37.)

Defendant also testified that although he told Officer Levey he had scheduled the assessment, he did not tell Officer Levey the name or location of the clinic. (Tr. 41–42.) When the Court asked if Officer Levey had given permission to do the assessment at La Frontera, Defendant stated: "No, ma'am. We really didn't have a discussion on where to go or if he accepted me to go there. I just wanted to get it tooken [sic] care of." (Tr. 45–46.) Defendant also testified that, despite having scheduled the assessment at La Frontera, he called Mountain Valley on May 31 "[b]ecause [he] wasn't trying to cause any problems." (Tr. 38; Def.'s Ex. 28.)

## II.    Legal Standard

The Government must establish a probation violation by a preponderance of the evidence. *United States v. Ramirez*, 347 F.3d 792, 798 & n.5 (9th Cir. 2003); *United States v. Perkins*, 67 F.4th 583, 615 (4th Cir. 2023).

**III.    Discussion**

**Allegation A:** Standard condition 13 states that Defendant "must follow the instructions of the probation officer related to the conditions of supervision." (Doc. 41 at 3.) The Court finds by a preponderance of the evidence that Defendant violated this condition.

Officer Levey testified that, on April 25 and May 6, he told Defendant to provide him with a copy of Defendant's previous mental health assessment; that Defendant acknowledged the instructions; and that, as of the date of the evidentiary hearing, Defendant still had not provided him with a copy. (Tr. 9–10.) This testimony is corroborated by the "chronos" notes for Defendant's case. (Pl.'s Ex. 8.) An entry on April 25 states that Defendant "reportedly completed a mental health assessment" while on pretrial release; that "USPO Levey instructed [Defendant] to provide proof of the reported assessment he previously completed by 5/5/2024;" and that Defendant "acknowledged" the instruction. (*Id.* at 24–25.) Entries on May 6 state that Defendant "failed to follow instructions and provide a copy of his reported mental health assessment," and that Officer Levey gave Defendant "a new deadline of 5/29/2024 to provide a copy of the mental health assessment he claimed previously completing." (*Id.* at 21–22.) And an entry on May 30 states that, as of that date, Officer Levey still had not received a copy. (*Id.* at 15.)

Officer Levey's testimony, which is corroborated by the chronos notes, is credible. Defendant's testimony on this issue, however, is not credible. As noted, he claims that Officer Levey "never asked" him to submit a copy of the assessment. (Tr. 41.) He also claims that he verified that his provider emailed a copy of the assessment to Officer Levey. (*Id.* at 34–35.) It strikes the Court as implausible that Officer Levey, who wanted Defendant to complete a second assessment, would not be interested in seeing Defendant's first assessment. And there is an incongruity in Defendant's testimony: why would he verify that Officer Levey received a copy of the assessment if Officer Levey never asked for one? For these reasons, Defendant's testimony on this issue is not believable.

The evidence shows that Officer Levey gave Defendant an instruction "related to the conditions of supervision"—to provide a copy of the mental health assessment by a

1    certain date—and that Defendant failed to follow it. Therefore, Defendant violated standard
2    condition 13.

3        **Allegations B and C:** Special condition 1 states, in relevant part, that Defendant
4    "must participate as instructed by the probation officer in a program of substance abuse
5    treatment." (Doc. 41 at 4.) Special condition 4 states, in relevant part, that Defendant "must
6    participate in a mental health assessment." (*Id.*) The Court finds by a preponderance of the
7    evidence that Defendant violated these conditions.

8        The evidence shows that Officer Levey told Defendant to contact Mountain Valley
9    to schedule a substance abuse and mental health assessment. Specifically, the chronos notes
10   show that, on April 25 and May 6, Officer Levey told Defendant that he would be referred
11   for a "mental health assessment with a substance component." (Pl.'s Ex. 8 at 21, 25.)
12   Officer Levey's text messages show that, on May 7 and May 29, he told Defendant to
13   schedule the assessment at Mountain Valley. (Pl.'s Ex. 4 (instructing Defendant to "contact
14   Mountain Valley" and "schedule the nearest assessment"); Pl.'s Ex. 5 (instructing
15   Defendant to schedule an assessment "per the 5/7 instructions" by May 30 or "the Judge
16   w[ould] be notified").) While Defendant disagreed with the instructions, his responses
17   show that he received and acknowledged them. (Pl.'s Exs. 4, 5.) The evidence also shows
18   that Defendant never scheduled an assessment at Mountain Valley: at the hearing, he
19   testified that he had not; and Mountain Valley confirmed it in an email to Officer Levey.
20   (Tr. 39–40; Pl.'s Ex. 7.) These facts establish that Defendant failed to participate as
21   instructed in a substance abuse and mental health assessment.

22       Defendant testified that he did not violate his conditions because Officer Levey
23   "was accepting" of him doing the assessment through a clinic besides Mountain Valley,
24   and on May 30 he scheduled an assessment at La Frontera. (Tr. 35–37.) However, his
25   testimony that Officer Levey gave permission to use a different clinic is not credible.
26   Defendant's initial testimony was vague, so the Court directly asked him if he had Officer
27   Levey's permission. (Tr. 45–46.) He responded: "No ma'am. We really didn't have a
28   discussion on where to go or if he accepted me to go there. I just wanted to get it tooken

[sic] care of." (Tr. 46.) This testimony shows that Defendant made a unilateral decision to use a different clinic. Indeed, in June, Officer Levey emailed Mountain Valley to inquire whether Defendant had scheduled an assessment there. (Pl.'s Ex. 7.) It would make little sense for him to do so if he had authorized the use of another clinic. Furthermore, as to Defendant's testimony that there was no "discussion on where to go," the Court disagrees that Officer Levey's instructions were ambiguous. Officer Levey's text message told Defendant who to contact, provided a phone number, and included specific instructions to schedule the nearest assessment. (Pl.'s Ex. 4.) There was no ambiguity.[2]

There are two other issues which, while not affecting the Court's conclusions, warrant a brief discussion. First, Officer Levey's testimony indicates that Defendant had a May 30 deadline to schedule an assessment at Mountain Valley. (*See* Tr. 30.) However, the chronos notes state that, during a telephone call on the evening of May 30, Officer Levey gave Defendant an additional day (until May 31) to schedule the assessment. (Pl.'s Ex. 8 at 15.) The record shows that Defendant did call Mountain Valley on May 31, though he apparently did not speak to anyone. (Def.'s Ex. 28.) This does not change the Court's conclusion that Defendant violated his conditions, as the fact remains that Defendant never scheduled an assessment at Mountain Valley.

Second, much of defense counsel's questioning of Officer Levey was focused on the notion that Officer Levey could and should have handled Defendant's noncompliance differently (e.g., he could have requested a hearing instead of filing a petition to revoke). (Tr. 23–28.) Counsel's questioning suggested that, because Defendant has complied with all his other conditions, lesser action would have been appropriate. (Tr. 26–28.) These points might have relevance toward a fair disposition, but the Court finds that they do not bear on the question of whether Defendant committed the violations as alleged.

. . . .

---

[2]    Through his questioning, defense counsel raised an issue regarding Mountain Valley's phone number. (Tr. 16–18.) He offered no argument on that issue, but his questions seemed to imply that Defendant might have been confused as to which number to call. But Defendant testified that he had called Mountain Valley numerous times, and Mountain Valley has a record of contact with him. (Tr. 34; Pl.'s Ex. 7.)

**IV.    Conclusion**

The Court **recommends** that the district judge find, by a preponderance of the evidence, that Defendant violated standard condition 13, special condition 1, and special condition 4, as set forth in Allegations A, B, and C of the petition to revoke. (Doc. 42.)

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties have 14 days to file specific written objections with the district court. Fed. R. Crim. P. 59(b)(2). The parties have 14 days to respond to objections. The parties may not file replies on objections absent the district court's permission. A failure to file timely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 24th day of October, 2024.

Honorable Maria S. Aguilera
United States Magistrate Judge